**In re Lawrence M. HILL and Judith L. Hill, Debtors.**

**Kathleen M. HILL, Plaintiff,**

v.

**Lawrence M. HILL, Defendant.**

**Bankruptcy No. 94 B 52359.
Adv. No. 95 A 5018.**

United States Bankruptcy Court,
N.D. Illinois,
Western Division.

Aug. 3, 1995.

J.F. Heckinger, Rockford, IL, for plaintiff.

Jeffry A. Dahlberg, Loves Park, IL, for defendant-debtors.

### MEMORANDUM OPINION

RICHARD N. DeGUNTHER, Bankruptcy Judge.

This matter came before the Court on June 27, 1995, on the Complaint of the Plaintiff–Creditor, Kathleen M. Hill, to Determine the Dischargeability of a Debt. The Plaintiff

is represented by Attorney J.F. Heckinger. The Defendant–Debtor, Lawrence M. Hill, is represented by Attorney Jeffry A. Dahlberg.

### BACKGROUND

The Debtor filed for voluntary relief under Chapter 7 of the Bankruptcy Code ("Code") on December 21, 1994. The Debtor and the Plaintiff were divorced in January of 1994. In the course of the divorce, the parties entered into a Marital Settlement Agreement that addressed the treatment of their rights and obligations concerning all their property. Both parties agreed to waive the right of maintenance from each other. The marital residence was quitclaimed to the Debtor and he agreed to assume the outstanding mortgage, taxes, insurance, maintenance and upkeep on the residence. He also agreed to hold the Plaintiff harmless from related debts. The Plaintiff kept her 1991 Plymouth Sundance, while the Debtor retained a 1982 Chevrolet Van and a 1981 Suzuki motorcycle. Each agreed to hold the other harmless from any obligation arising from the vehicles.

The Debtor and the Plaintiff also agreed to assume certain debt obligations.[1] The Plaintiff seeks to have the Debtor's obligation to assume five debts determined to be nondischargeable.[2] Those debts are:

1) J.F. Heckinger, P.C. for $750.00.

2) Lawrence Friedman P.C. for $3,325.08.[3]

3) Bank of New York credit card for $3,003.46.

4) Transamerica Financial Services for $2,600.00.

5) First Federal Savings for $42,000.00.[4]

Until the filing of the bankruptcy, the Debtor had been making monthly payments of $360.00 on the first four debts. The fifth

1. The Debtor plays in a band and the debts relating to those expenses remained with him. Without those debts, the obligations owed between the two parties were split almost evenly.

2. At the risk of wasting the time of those who have graduated from Bankruptcy Kindergarten, it should be noted that the debt at issue is the obligation of the Debtor to the Plaintiff that arises in the Marital Settlement Agreement. *Matter of Woods*, 561 F.2d 27 (7th Cir.1977).

The debts owed to third parties are not directly at issue. They are merely the measure of the debt at issue.

3. This is a credit card debt.

4. As a practical matter, the Debtor reaffirmed this debt and makes the monthly payments, therefore the debt is not presently a threat to Plaintiff.

debt pertains to the first mortgage on the Debtor's residence.

The residence is valued in the bankruptcy petition at $66,000.00. Currently, there are two mortgages on the residence. The first mortgage is listed as $42,000.00 and the Debtor makes monthly payments of $570.00. The second mortgage is listed as $14,382.19 and the Debtor testified that he makes monthly payments of $240.00.[5]

The Debtor has remarried and lives with his current wife and her two children, whom he has not adopted. The Debtor currently earns approximately $1,300.00 a month as a technician, a position he has held for seven years. His income from the band is nominal. His wife, who receives child support payments of $400.00 a month, is currently not employed. Her primary duties remain to the home and her children. The Debtor has monthly expenses[6] of approximately $1,140.00, not including the two mortgage payments and a voluntarily reaffirmed debt.[7] The total is $2,025.00.[8] The Debtor's vehicles, which are free and clear of liens, are older models and are not in the best shape. The Debtor testified that if one vehicle fails, he will have to find alternative means of transportation because no money is available for the purchase of another vehicle.[9]

The Plaintiff earns approximately $1,000.00 a month. Her monthly expenses total approximately $1,082.00. The Plaintiff lives with a roommate, does not eat out at restaurants and has no other source of income except for a Christmas bonus of $100.00 to $200.00.

---

5. The petition lists the payment on the second mortgage at $230.00 per month.

6. Utilities $280.00; Food $575.00; Clothing (kids) $40.00; Car Insurance $30.00; Transportation $160.00; Laundry $25.00; Medical $30.00.

7. The reaffirmed debt is for $2,325.00 of which $2,025.00 is unsecured. Monthly payments are $75.00. The Debtor testified that this debt was incurred for band equipment and household goods.

8. Plaintiff's counsel directs the Court's attention to the fact that the Debtor's expenses, such as for food and utilities, are for four people, and yet the

## DISCUSSION

The Plaintiff brought the Complaint under two Counts: Sections 523(a)(5) and 523(a)(15). This Memorandum Opinion addresses the Section 523(a)(15) Count.[10] The Bankruptcy Reform Act of 1994, enacted on October 22, 1994, created a new subsection of debt that would be excepted from discharge, Section 523(a)(15). The Court will be venturing into unchartered waters in its analysis of this new subsection. It is necessary, therefore, to begin by considering procedural and substantive issues that arise under the new subsection as they relate to the facts here.

### A. *Section 523(a)(15)*

Section 523(a)(15) provides that:

A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

Debtor is under no legal obligation to support the two children. The Court notes that child support payments included in the available monthly income equalize the extra expense outlay.

9. The Debtor did not explain why he needs two vehicles to get to work.

10. The Court decided the Section 523(a)(5) Count from the bench. Summarily, the only third party debt that is nondischargeable, as between the Plaintiff and the Debtor, pursuant to Section 523(a)(5), is the attorney fees of $750.00.

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor[.]

11 U.S.C. § 523(a)(15) (Norton Bankr.Code Pamphlet rev. ed. 1994–1995).

The legislative history indicates that the new subsection addresses the treatment of hold harmless agreements and property settlements that were often used in exchange for lower alimony payments. *See* 140 Cong. Rec. H.10752–01 (daily ed. Oct. 4, 1994). Several courts have held that a debt arising from an agreement whereby the debtor agrees to hold the other spouse harmless on certain martial debts is dischargeable in bankruptcy. *See Woods,* 561 F.2d 27; *In re Semler,* 147 B.R. 137 (Bankr.N.D.Ohio 1992); *In re Fagan,* 144 B.R. 204 (Bankr.D.Mass. 1992); *In re Mallin,* 137 B.R. 673 (Bankr. N.D.Ohio 1992); *In re Fitzsimmons,* 110 B.R. 912 (Bankr.E.D.Mo.1990). The result places the nondebtor former spouse with substantial marital debts and little or no alimony or maintenance to pay those debts. The new subsection addresses this concern by excepting from discharge those debts arising out of a divorce decree or separation agreement that are not in the nature of alimony, maintenance or support, unless certain exceptions are met.

B. *Must affirmative defenses be pled?*

The Debtor's Answer to the Complaint is devoid of affirmative defenses. The lack of affirmative defenses raises the procedural question of whether sections (A) & (B) of Section 523(a)(15) must be pled as affirmative defenses by the Debtor. *See* Fed. R.Civ.P. 8(c).[11]

The Debtor contends that the inclusion of Section 523(a)(15) in Section 523(c) places the burden on the movant to prove that 1) the debtor has the ability to pay or 2) that the benefit of receiving a discharge outweighs the detrimental consequences to the nondebtor spouse, former spouse or child of the debtor.[12] The Debtor argues that since the burden is placed on the movant in Sections 523(a)(2), (a)(4) and (a)(6), the inclusion of Section 523(a)(15) in Section 523(c) mandates a similar application.

 Having carefully considered the language of the provision, the Court disagrees with the Debtor's argument. A creditor seeking judgment of nondischargeability bears the burden of proof through a preponderance of evidence. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Certain subsections of Section 523, however, require the debtor to bear the burden of demonstrating circumstances meriting the dischargeability of a particular debt. This is true, for instance, in cases where the debtor seeks to discharge a student loan and must carry the burden of demonstrating undue hardship. *See In re Bachner,* 165 B.R. 875, 880 (Bankr.N.D.Ill.1994); *In re Berthiaume,* 138 B.R. 516, 520 (Bankr.W.D.Ky. 1992); *In re Evans,* 131 B.R. 372, 374 (Bankr.S.D.Ohio 1991); *In re Foreman,* 119 B.R. 584, 586–87 (Bankr.S.D.Ohio 1990); *In re Conner,* 89 B.R. 744, 747 (Bankr.N.D.Ill. 1988). The placement of Section 523(a)(15) in Section 523(c) does not overcome the language of the provision.

Moreover, Section (A) of 523(a)(15) requires a showing that the Debtor does not have the ability to pay. If the burden is placed on the Plaintiff to show the Debtor does not have the ability to pay, the Plaintiff would want to fail to meet the burden. Similarly, section (B) requires a showing that

---

11. Fed.R.Civ.P. 8(c), made applicable to bankruptcy proceedings by Fed.R.Bankr.P. 7008, states in pertinent part—
 In pleading to a preceding pleading, a party shall set forth affirmatively ... any other matter constituting an avoidance or affirmative defense.

12. Section 523(c) states in pertinent part—
 (1) Except as provided in subsection (a)(3)(B) of this section, the debtor shall be discharged

from a debt of a kind specified in paragraph (2), (4), (6), or (15) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), (6), or (15), as the case may be, of subsection (a) of this section.
11 U.S.C. § 523(c)(1) (Norton Bankr.Code Pamphlet rev. ed. 1994–1995).

discharging the debt would result in a greater benefit to the Debtor. Again, if the burden is on the Plaintiff, the Plaintiff would want to fail to meet the burden. Thus, by the very nature of Section 523(a)(15), the burden of the exceptions must shift to the Debtor.

Furthermore, at least one commentator finds the burden properly shifts to the debtor.

> Although the creditor has the burden of proof for exceptions to discharge, it appears that once an action has been filed the burden of production of evidence shifts to the debtor to show inability to pay or to show that the benefit of the discharge to the debtor outweighs the detriment to the creditor.

Judge Margaret Dee McGarity (Bankr. D.Wisc.), *"Family Law Provisions in the Bankruptcy Reform Act of 1994,"* B.C.D. Weekly News & Comment, Vol. 27 (May 16, 1995).

The burden shift amplifies the policy that even though the debtor ordinarily is entitled to a discharge of debts in bankruptcy, the debtor must at times show he or she is deserving of the dischargeability of a particular debt.

Thus, the Court concludes the Debtor must plead the affirmative defenses, which can be pled in the alternative. Nevertheless, in this case of first impression, the Court finds that the attorneys were prepared to proceed with trial on the merits, therefore it was not necessary to postpone the trial to permit a formal amendment to the pleadings.

## C. *The substance of Section 523(a)(15)*

The enactment of Section 523(a)(15) appears to make a debt relating to property settlements nondischargeable unless the debtor can prove an inability to pay or, alternatively, that the benefit of the discharge of such debt outweighs the detriment to the nondebtor former spouse from their nonpayment. A question arises as to whether an analysis similar to the one invoked for "un-due hardship" in student loans should be utilized in dischargeability determinations. Arguably, the absence of the phrase "undue hardship" provides support for the view that the "undue hardship" standards are not applicable in Section 523(a)(15) cases.

> Earlier drafts of the bill, and other legislative proposals, provided that property divisions would be nondischargeable altogether, or that they would be nondischargeable except in the case of "undue hardship." The "undue hardship" standard has been developed in the area of student loans ... and could provide a measure of predictability in the outcome of a particular case. However, the proponents believed complete nondischargeability or nondischargeability except in circumstances of undue hardship were too harsh in certain cases and developed a standard encompassing inability to pay or a balancing test, allowing the bankruptcy court to weigh whether equities favor the debtor or creditor.

McGarity, *supra.* But see *In re Comisky,* 183 B.R. 883 (Bankr.N.D.Cal.1995) (found a portion of the debtor's obligation in a marital settlement agreement was nondischargeable because the debtor had the ability to pay a portion of the debt over time).

For purposes of both affirmative defenses, the Court finds the appropriate measuring point is the date of the filing of the Complaint.[13]

### 1. Section 523(a)(15)(A)

To succeed under Section 523(a)(15)(A), the debtor must show an inability to pay the debt at issue. See 11 U.S.C. § 523(a)(15)(A). "In other words, the debt will remain dischargeable if paying the debt would reduce the debtor's income below that necessary for the support of the debtor and the debtor's dependents. The Committee believes that payment of support needs must take precedence over property settlement debts." 140 Cong.Rec. H.10752–1 (daily ed. Oct. 4, 1994).

---

**13.** This measuring point differs from the one for cases brought under Section 523(a)(5), where the measuring point is the time of the entry of the divorce decree. *In re Szuch,* 117 B.R. 296, 301 (Bankr.N.D.Ohio 1990); *In re Fahland,* 110 B.R. 431, 432 (Bankr.E.D.Mo.1990).

The use of the phrase "ability to pay" in Section 523(a)(15)(A) directs the Court to Section 1325(b)(2)'s "disposable income" test. The language of Section 523(a)(15)(A) essentially mirrors the language of Section 1325(b)(2).[14] Thus, the Court finds a similar analysis is appropriate.

■ The "ability to pay" test focuses on whether the debtor's budgeted expenses are reasonably necessary. Courts interpreting "reasonably necessary" have arrived at several standards. Many courts are reluctant to impose their own values on the debtor, and exclude only luxury items and obvious indulgences. *In re Navarro*, 83 B.R. 348, 355 (Bankr.E.D.Pa.1988). Other courts find that only those expenses for basic needs not related to the debtor's former status in society or accustomed lifestyle should be allowed. *In re Reyes*, 106 B.R. 155, 157 (Bankr.N.D.Ill. 1989) (citations omitted); *see also* James Rodenberg, *Reasonably Necessary Expenses or Life of Riley?: The Disposable Income Test and a Chapter 13 Debtor's Lifestyle*, 56 Mo. L.REV. 617 (1991) (discusses the several twists on the reasonable expense standards).

Regardless of which standard is applied to the present case, the Debtor's financial condition renders it virtually impossible for him to pay the debt at issue. The Debtor testified to expenses of approximately $2,025.00 per month and an income of $1,700.00 per month. On its face, there could be no clearer showing of a debtor who does not have the ability to pay.[15]

■ Plaintiff's counsel attempted to prove the Debtor *could* have the ability to pay. The Plaintiff argues that the Debtor's expenses pertain to a family of four, of which he has no obligation to support the two children; that if the Debtor's wife took a part-time waitress job, she could supplement their income sufficiently to pay the debt; and that if the Debtor did not have the ability to pay, he should not have reaffirmed other debts.

Plaintiff's arguments are not totally without merit. The Court, however, is reluctant to impose lifestyle changes on the Debtor, especially when the Debtor is not attempting to maintain a luxurious lifestyle. Although the Debtor's expenses are slightly increased because of the two children, the Plaintiff ignores the wife's contribution of $400.00 per month from received child support payments. The reaffirmed debt of $2,325.00 can hardly be considered an attempt to maintain an extravagant lifestyle. True, a portion goes toward a piece of band equipment, but in the "big picture" analysis of the case, the $75.00 monthly payment would have no bearing on the outcome.

Here, the Debtor has maintained a steady job for seven years, has attempted to pay all his obligations, but has incurred more debt than he can manage. One of the goals of bankruptcy is to provide the honest, but unfortunate debtor with a fresh start. *Local Loan Co. v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934).

Thus, the Court finds the Debtor has met his burden of proving that he does not have the ability to pay the debt in question. Although it is unnecessary to proceed further, the Court finds that a review of Section 523(a)(15)(B) will be of use to future litigants.

2. Section 523(a)(15)(B)

■ Under Section 523(a)(15)(B) a debtor must show the benefit of a discharge outweighs the detrimental consequences to the

---

**14.** The specific language in Section 1325(b)(2) is as follows:

... not reasonably necessary to be expended—
(A) for the maintenance or support of the debtor or a dependent of the debtor; and
(B) if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.
11 U.S.C. § 1325(b)(2).

**15.** The unresolved question is whether Congress intended an "all or nothing" result or whether

the courts, by invoking their equitable powers, can permit a partial discharge similar to results reached in some student loan undue hardship cases. *See In re Gammoh*, 174 B.R. 707, 711 (Bankr.N.D.Ohio 1994); *Berthiaume*, 138 B.R. at 521; *In re Shoberg*, 41 B.R. 684, 688 (Bankr. D.Minn.1984). The circumstances of this case do not require resolution of this question. It should be noted, however, that the phrase "to the extent that" does not appear in Section 523(a)(15), which could indicate an intent to limit the courts to an "all or nothing" result.

nondebtor spouse, former spouse or child of the debtor. *See* 11 U.S.C. § 523(a)(15)(B).

For example, if a nondebtor spouse would suffer little detriment from the debtor's nonpayment of an obligation required to be paid under a hold harmless agreement (perhaps because it could not be collected from the nondebtor spouse or because the nondebtor spouse could easily pay it) the obligation would be discharged. The benefits of the debtor's discharge should be sacrificed only if there would be substantial detriment to the nondebtor spouse that outweighs the debtor's need for a fresh start.

140 Cong.Rec. H.10752–1 (daily ed. Oct. 4, 1994).

The lack of an analogous Code provision compels the Court to search for its own guidelines for balancing the equities. Factors to examine include, but are not limited to the following: the income and expenses of both parties; whether the nondebtor spouse is jointly liable on the debts; the number of dependents; the nature of the debts; the reaffirmation of any debts; and the nondebtor spouse's ability to pay.

■ Bankruptcy Judges are often called upon to apply a totality of the circumstances analysis to the interpretation of subjective terms. And we do it with a conscientious vigor. But have we ever been called upon to decide a more illusive statutory standard than the benefit of a discharge to Party A versus the detrimental consequences to Party B?

Having reviewed the circumstances here, the Court finds that both the Debtor and the Plaintiff earn modest incomes, have extremely limited budgets and live frugal lifestyles.

The Debtor lives in his residence with his new wife and her two children, who enjoy his support, even if he has not adopted the children. The third party debts involved in this case are not related to lavish items, but rather household goods, clothing and some of the Debtor's band equipment. The reaffirmed debt also pertains to household goods and band equipment.

On the other hand, the Plaintiff has no other dependents and lives with a roommate to help reduce expenses. She has consolidated her obligations in the Marital Settlement Agreement and is making regular monthly payments. Yet, the Plaintiff testified that she has to juggle her finances to make ends meet. She does not have the ability to pay the third party debts any more than the Debtor.

Here, the benefit of the discharge to the Debtor is significant. He obtains a fresh start, unburdened by debts which he has no ability to pay. He receives relief from his financial plight as he undertakes marital responsibilities with his new family.

The detrimental consequences to the Plaintiff are also significant. She finds herself burdened with debts she now is alone legally obligated to pay. She may be sued on those debts. If the Debtor does not contribute toward payment of those debts, she, too, may have to file a Chapter 7.

That is indeed a detrimental consequence, but then again, is it so bad? A discharge of debts by *both* parties strikes the Court as the most sensible solution to the combined problems of the Plaintiff and the Debtor.[16]

The Court concludes that under Section 523(a)(15)(B), the benefit of the discharge to the Debtor outweighs the detrimental consequence to the Plaintiff.

\* \* \* \* \* \*

In summary, this Court is called upon, under Section 523(a)(15), to decide who must pay certain debts as between two people, neither of whom can afford to do so. The plight the parties find themselves in does not arise from extravagant lifestyles. Both parties work hard for modest earnings and live frugally. The filing of a bankruptcy petition affords a measure of relief to those in a financial downfall. To date one of the parties

16. Query # 1: If the Court had ordered the debt between the Plaintiff and the Debtor at issue here nondischargeable under Section 523(a)(15), and the Plaintiff then files a Chapter 7, discharging her liability for the third party debts, would the Debtor still be legally obligated to pay the nondischargeable 523(a)(15) debt to the Plaintiff?

Query # 2: If the Plaintiff now files for bankruptcy relief, can Lawrence Hill raise Section 523(a)(15) in *her* case? Or is it res judicata?

has sought that relief. Section 523(a)(15) is a limit on that relief unless the facts permit otherwise, as here.

Thus, the Court finds, as between the Plaintiff, Kathleen M. Hill, and the Debtor, Lawrence M. Hill, the obligation of the Debtor to assume and hold the Plaintiff harmless from the debts of Lawrence Friedman P.C., the Bank of New York credit card, Transamerica Financial Services and First Federal Savings is dischargeable.

Further, that the obligation of the Debtor, Lawrence M. Hill, to reimburse the Plaintiff, Kathleen M. Hill, for the attorney fees of J.F. Heckinger, P.C. is nondischargeable pursuant to Section 523(a)(5).