In The Matter of William Patrick
CANTRELL; Carol Ann
Cantrell, Debtors.

Jim PERDUE; John Turner, Appellants,

v.

Carol Ann CANTRELL, Appellee.

No. 95–20683
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

July 18, 1996.

John W. Berkel, Houston, TX, for Jim Perdue and John Turner.

William Edward King, Kemah, TX, for Carol Ann Cantrell.

Before POLITZ, Chief Judge, and JONES and WIENER, Circuit Judges.

POLITZ, Chief Judge:

Jim Perdue and John Turner appeal the district court's affirmance of the orders of the bankruptcy court holding that their claims against Carol Ann Cantrell were time-barred and dischargeable in bankruptcy. We affirm.

*Background*

Daniel Brubaker, a real estate developer, in 1982 organized a joint venture called Heritage Manor for the purchase and management of several quadraplex units he was developing. Cantrell, an accountant in the firm of Cantrell and Hernandez and a part-owner of Brubaker's development, obtained the contract for the accounting services of Heritage Manor. In addition, sometime during 1982 Brubaker agreed to pay the accounting firm real estate commissions "on the placement of investors in the Heritage Manor Partnerships."

Perdue, a personal injury attorney practicing in Houston, hired Cantrell as his accountant and financial advisor in November 1982. Brubaker and Cantrell prepared a prospectus for Perdue which reflected that Heritage Manor would be run as a limited partnership with Brubaker as the general partner. Cantrell provided Perdue with the prospectus, a tax opinion letter, and related materials and Perdue purchased 17–½% of Heritage Manor for $60,812.50.

Cantrell subsequently sent a copy of the prospectus to Turner, Perdue's law partner, who purchased an 11–½% interest in the joint venture in December 1982 for $39,962.50. Cantrell was not Turner's accountant and did not meet with him personally to discuss the investment. Cantrell never informed either Perdue or Turner of her ownership interest in the development or her commission agreement with Brubaker.

Before the venture could purchase the development, Brubaker ran into difficulty obtaining permanent financing. To allay the lenders' concerns, it was proposed that the transaction be closed in the names of the individual investors rather than the joint venture. To effect this arrangement, Brubaker hired counsel to draft special powers of attorney for Perdue and Turner authorizing Brubaker to, *inter alia*, acquire, finance, or refinance each building and execute promissory

notes in the amount of $133,950. Perdue called Cantrell who, after speaking with Brubaker, recommended that he sign. Both Perdue and Turner signed the powers of attorney in May 1983. Brubaker subsequently closed on two buildings in Perdue's and Turner's names with a $128,950 mortgage on each. No loans were ever closed in the name of the joint venture or any other investors.

Over time the buildings did not generate the necessary cash flow. This failing, combined with disputes within the venture, led the investors to file a lawsuit in state court against Brubaker. In April of 1987 Perdue and Turner brought a cross-action against Cantrell, citing her fiduciary relationship with Perdue and her concomitant failure to divulge her financial relationship with both the development and the developer. In August of 1988 the lender foreclosed on the venture property and sued Perdue and Turner for the deficiency.

Cantrell and her husband filed a Chapter 11 petition in bankruptcy in May 1989. After that petition was dismissed the Cantrells filed a Chapter 7 liquidation bankruptcy proceeding. Perdue and Turner instituted adversary proceedings invoking 11 U.S.C. §§ 523 and 727, objecting to the dischargeability of their debts. After a hearing the bankruptcy judge initially rendered a judgment favorable to Perdue and Turner. Upon reconsideration, however, that ruling was reversed and the bankruptcy judge held that the claims of Perdue and Turner were barred by the applicable statutes of limitations and that any extant debt was dischargeable in bankruptcy. The district court upheld this decision and Perdue and Turner timely appealed.

*Analysis*

When, as here, we review factual findings of a bankruptcy court which have been affirmed by the district court, we will reverse those findings "only if, considering all the evidence, we are left with the definite and firm conviction that a mistake has been made." [1] We review all conclusions of law *de novo*.[2]

Perdue and Turner allege that Cantrell fraudulently withheld information to induce them to enter into the joint venture agreement. These alleged misrepresentations occurred in late 1982 and/or in the first three months of 1983. The Texas four-year statute of limitations on fraud had expired by April 1987 when Perdue and Turner filed their state court claims against Cantrell.[3] In an effort to elude the running of the limitations period Perdue and Turner plead the discovery rule, claiming that they did not discover the existence of the misrepresentations until sometime after April 1983, within the four-year limitations period.[4] The bankruptcy court found that Perdue and Turner had not adduced any evidence demonstrating when they became aware of Cantrell's interests in the joint venture and had, therefore, failed to meet their burden of proving discovery and action thereon within the four years prior to April 1987.[5] Our review of the record reveals no error in this finding; the claims of Perdue and Turner arising out of the signing of the joint venture agreement clearly are time-barred.[6]

Perdue's and Turner's state law fraud claim arising out of the signing of the powers of attorney in May 1983 is not barred by the statute of limitations. The bankruptcy court found, however, that because the powers of

1. *Matter of Young,* 995 F.2d 547, 548 (5th Cir. 1993).

2. *Id.*

3. *See Russell v. Ingersoll–Rand Co.,* 841 S.W.2d 343 (Tex.1992).

4. *See Willis v. Maverick,* 760 S.W.2d 642, 646 (Tex.1988) ("the statute of limitations ... does not begin to run until the claimant discovers or should have discovered through the exercise of reasonable care and diligence the facts establishing the elements of his cause of action").

5. *Id.*

6. The bankruptcy court, while addressing the Texas state law fraud claim also held that the statutes of limitation governing the other federal and state claims brought by Perdue and Turner in relation to their membership in the joint venture had run. We find no error in the bankruptcy court's disposition of these other claims.

attorney were not vague or misleading as to the scope of the agency being created, and because there was no evidence showing that Perdue and Turner were harmed by the closings,[7] Cantrell's omissions did not constitute actionable fraud. We discern no error in that finding and conclusion.

Perdue and Turner also challenge the bankruptcy court's ruling that the subject debt is dischargeable in bankruptcy. The bankruptcy court correctly observed that consideration of dischargeability under 11 U.S.C. § 523(a)(2) is obviated by the earlier finding that no prosecutable claim existed. The court also correctly opined that, in the absence of an express trust and a recognizable corpus, 11 U.S.C. § 523(a)(4) is inapplicable.[8] Finally, we affirm the bankruptcy court's conclusion that 11 U.S.C. § 727(a)(2)(A) is similarly inapplicable because the one-year limitations period had accrued on the complained-of transfers.

AFFIRMED.

---

**7.** The property was appraised at $186,000, $56,-000 less than the amount of the loan.

**8.** *See Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934).