**In re Brenda WYNN nka Brenda Wolfe.**

**Eldon L. WYNN, Plaintiff,**

v.

**Brenda WYNN, nka Brenda Wolfe, Defendant.**

**Bankruptcy No. 96–30315.**
**Adversary No. 96–3117.**

United States Bankruptcy Court,
N.D. Ohio,
Western Division.

Jan. 23, 1997.

Timothy Dempsey, Sandusky, OH, for Plaintiff.

Melvin Saferstein, Sandusky, OH, for Defendant.

## OPINION AND ORDER DENYING COMPLAINT TO DENY DISCHARGE AND EXCEPT DEBT FROM DISCHARGE AND DISMISSING COMPLAINT WITH PREJUDICE

WALTER J. KRASNIEWSKI,
Bankruptcy Judge.

This matter is before the Court on Eldon L. Wynn's ("Wynn" 's) complaint which seeks to deny the discharge of his former wife Brenda Wynn nka Brenda Wolfe (the "Debtor") pursuant to 11 U.S.C. § 727(a)(2), (a)(3), (a)(4) and (a)(5) based on her alleged concealment or dissipation of assets. Wynn also alleges that the Debtor's failure to disclose her alleged operation of a reptile breeding business in her Statement of Affairs war-

rants denial of her discharge. Alternatively, Wynn seeks to except from discharge a $4,161.50 divorce court judgment against the Debtor under § 523(a)(2)(A), (a)(4), (a)(5), and (a)(15). The Court finds that Wynn's complaint is not well taken and should be denied. The Court further finds that Wynn's complaint should be dismissed with prejudice.

### FACTS

The Debtor married Wynn on February 14, 1991. The Debtor vacated the trailer where she resided with Wynn (the "trailer") on September 15, 1993. The Common Pleas Court of Erie County, Ohio's ("state court") granted Wynn a divorce from the Debtor on November 3, 1995. *See* Judgment Entry of divorce (the "decree"), at p. 3. On February 5, 1996, the Debtor filed a petition under chapter 7 of title 11 (the "petition date").

On the date that the Debtor left Wynn, she removed a number of lizards and snakes (collectively "the reptiles") from the trailer and moved them to the home (the "Home") of Clifford Michael Wolfe ("Wolfe"), her current husband. The disputes between the parties in domestic relations court and in the present adversary proceeding center on the Debtor's removal of the reptiles from the trailer, her subsequent custody of the reptiles, and her alleged operation of a breeding business with the reptiles.

**The Divorce Decree**

The state court found that the Debtor removed the reptiles from the trailer on the date that she separated from Wynn and that the reptiles were marital property with a value of $8,322.00. Decree, at p. 3, para. 8–9. The decree awarded the Debtor "whatever reptiles and animals remain[ed] in her possession". Decree, at p. 3. In addition, the state court granted Wynn judgment "in the sum of $4,161.50 representing one-half of the value of the reptiles and animals that [the Debtor] removed from the marital residence" plus interest at 10% per annum. Decree, at p. 4.

**The Debtor's Valuation of the Reptiles in Her Bankruptcy Schedules**

The Debtor's bankruptcy schedules (the "schedules") list total personal property of $1,575.00, including a value of $775.00 for lizards and snakes. The Debtor testified that she derived the values for her reptiles from price lists for reptiles which she had in her possession.

The Debtor testified that her Albino Burmese Python, for which Wynn had asserted a value of $2,500.00 in state court, had a value of $375.00 on the petition date. She explained that the present value of this reptile was minimal because similar pythons had recently become more easy to obtain. Further, as indicated in her Statement of Affairs, the Debtor testified that she incurred a loss "[b]etween 9/24/93 & present" of "6 geckos, 1 python, 2 iguanas, [and] 1 monkey-tailed skink".

**The Debtor's Alleged Reptile Breeding Business**

Wynn presented the testimony of several witnesses in support of his assertion that the Debtor was engaged in a substantial reptile breeding business on the petition date. According to Wynn, the Debtor failed to disclose her interest in this alleged business in her bankruptcy schedules and Statement of Affairs.

Chastity Slagle ("Slagle"), an employee at Our Enterprises Pet Shop (the "Pet Shop"), testified that she considered the Debtor to be a breeder of pets for a number of reasons. First, Slagle testified that the Debtor is "always" present at the trade shows held by the Northern Ohio Association of Herpitologists ("NOAH"). According to Slagle, who represents her employer at the NOAH trade shows, the Debtor typically rents two to three tables to sell her reptiles. Second, Slagle testified that the Debtor sold leopard geckos to the Pet Shop subsequent to the petition date in March or April of 1996. Third, Slagle testified that the Debtor called the Pet Shop in June or July of 1996 in an attempt to sell boa constrictors.

Notwithstanding Slagle's testimony that the Debtor engaged in the breeding business prior and subsequent to the petition date, the testimony of the Debtor and Wolfe has convinced the Court that, while the Debtor may have attended NOAH trade shows and sold reptiles on Wolfe's behalf on occasion, the

Debtor was not, and is not currently, a breeder of reptiles. Moreover, the Court discounts Slagle's testimony that she heard that the Debtor's friend Sandy Atkins ("Atkins") was keeping animals for the Debtor in Atkins' basement. Both Wolfe and Bonnie Thompson ("Thompson") testified that Atkins does not have a basement.

Charles Downing ("Downing"), the owner of Captain's Pets, testified that, though he purchased mice, rats and leopard geckos from the Debtor prior to the divorce, he was uncertain as to whether the Debtor or Wolfe owned these animals and reptiles.

In addition, Wynn offered the testimony of Sandusky Police Officer Ken Nixon ("Nixon"), who visited the Home a number of months subsequent to the petition date. Nixon testified that he observed numerous crickets, rats, tortoises, iguanas and snakes in the basement of the Home when he visited the Home in late September, 1996. However, Nixon testified that he was uncertain as to who owned these animals and reptiles.

Wolfe, who breeds snakes as a "hobby", testified that he owned substantially all of the animals and reptiles located in the basement of the Home, except for the leopard geckos, skinks and Albino Burmese Python listed on the Debtor's bankruptcy schedules. Thompson, an animal handler, testified that she has attempted to purchase a number of the reptiles and animals in the basement of the Home. According to Thompson, Wolfe stated that he owned the animals and reptiles in question and that they were not for sale.

**Other Alleged Omissions on the Debtor's Schedules and Statement of Affairs**

Although the Debtor receives sporadic child support from her first husband, the Debtor testified that she did not refer to these payments in her Statement of Affairs because her former husband was not paying court-ordered child support payments at the time the Debtor filed her petition.

Contrary to Wynn's assertion that she possessed a valuable diamond ring which she failed to schedule, the Debtor testified that she does not possess any diamond rings.

The Debtor further testified that, although she owned a one-half interest in a 1973 Harley Davidson motorcycle a number of years prior to the petition date, she does not have possession of the motorcycle and the motorcycle has no value because it was wrecked in an accident.

The Debtor testified that she owned a dog on the petition date which she kept as a pet. Wolfe testified that this animal had no monetary value because the dog is ten years old and hard of hearing.

**The Income and Assets of the Debtor, Wolfe and Wynn**

The Debtor has not been employed since 1991. She receives sporadic payments of court-ordered child support in the amount of $19.53 per week from her first husband for her son, Mark Mizer. While the Debtor was receiving Aid to Dependent Children and food stamps on the petition date, such payments have terminated.

Wolfe earns $15,000.00 per year as a bartender at Pat's Tavern. He also earns a limited income from the reptile breeding business. Additionally, he owns the house where he presently resides with the Debtor and her two children.

Wynn grosses between $1,500.00 and $2,000.00 per month from November through May in his job as a charter captain in Key West, Florida. During the summer, he owns and operates a produce stand on Route 250 in Sandusky, Ohio. Wynn's income tax returns for 1992 and 1993 disclosed net business income of $5,684.00 and $5,500.00, respectively. However, on cross-examination, Wynn was unable to state whether or not the income from the produce stand had been reported on his income tax returns.

**The Debtor's Alleged Fraud in Removing the Reptiles from the Trailer**

Although Wynn alleged that the Debtor's judgment debt to him should be excepted from discharge for fraud under either § 523(a)(2)(A) or (a)(4), the only evidence which he presented in support of this allegation was his vague testimony that the Debtor had "tricked" him into permitting her to remove the reptiles from the trailer.

## DISCUSSION
### BURDEN OF PROOF

■ Wynn bears the burden of proof by the preponderance of the evidence on his complaint to deny discharge. *Barclays/American Business Credit, Inc. v. Adams (In re Adams)*, 31 F.3d 389, 393–94 (6th Cir.1994) (citing *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991)), *cert. denied*, 513 U.S. 1111, 115 S.Ct. 903, 130 L.Ed.2d 786 (1995). Wynn also bears the burden of proof on his complaint to except the Debtor's judgment debt to Wynn from discharge under § 523(a)(2), (4), and (5). *Grogan*, 498 U.S. at 279, 111 S.Ct. at 655. On the other hand, the Debtor bears the burden of demonstrating that she does not have the ability to repay the judgment debt under § 523(a)(15)(A) or that discharging the debt would result in a benefit to the Debtor that outweighs the detrimental consequences to Wynn under § 523(a)(15)(B). *Henderson v. Henderson (In re Henderson)*, 200 B.R. 322, 324–25 (Bankr.N.D.Ohio 1996).

### WYNN'S COMPLAINT TO DENY DISCHARGE

#### Cause of Action Under § 727(a)(2)

■ Wynn has failed to meet his burden of establishing that the Debtor should be denied a discharge under § 727(a)(2)(A).

Wynn has failed to establish that the Debtor committed any of the acts proscribed by § 727(a)(2)(A) within the one year before the filing of the petition. *Perdue v. Cantrell (In re Cantrell)*, 88 F.3d 344, 346 (5th Cir.1996); *see Ag Credit, ACA v. Walton (In re Walton)*, 158 B.R. 948, 951 (Bankr.N.D.Ohio 1993) (finding that transfer which was not within one year prepetition did not warrant denial of discharge under § 727(a)(2)(A)). The Debtor's removal of the reptiles from the trailer did not occur within one year of the petition date. Further, Wynn did not present any persuasive evidence that the Debtor made any other transfers within one year prior to the petition date.

Nor has Wynn established that the Debtor committed any of the acts proscribed by § 727(a)(2)(B) after the date of the filing of the petition.

#### Cause of Action Under § 727(a)(3)

■ The Court further concludes that Wynn has failed to demonstrate that the Debtor maintained insufficient books and records.

Courts have measured the adequacy of a debtor's books and records against the type of books and records kept by a reasonably prudent debtor with the same occupation, financial structure, education, and experience. *Fahey Banking Co. v. Irey (In re Irey)*, 172 B.R. 23 (Bankr.N.D.Ohio 1994) (citations omitted); *James v. McCoy (In re McCoy)*, 114 B.R. 489, 500 (Bankr.S.D.Ohio 1990) (citations omitted); *United States v. Trogdon (In re Trogdon)*, 111 B.R. 655, 658 (Bankr.N.D.Ohio 1990) (citations omitted). The Debtor is a financially unsophisticated individual without extensive education. She is not involved in a trade or business. This adversary proceeding is plainly distinguishable from cases such as *In re Juzwiak*, where a debtor who had previously been involved in operating a small business was required to produce substantial books and records in light of expert testimony by accountants that similarly situated debtors typically kept such books and records. *In re Juzwiak*, 89 F.3d 424, 427–30 (7th Cir.1996); *cf. Hilliard v. Hollins*, 290 F.2d 263 (6th Cir.1961) (denying discharge of debtor/attorney who had handled large sums of money during the years prior to her bankruptcy). Therefore, the Court concludes that the Debtor was not required to produce substantial financial records.

Moreover, unlike *In re Dolin*, 799 F.2d 251, 253 (6th Cir.1986), Wynn did not present evidence that the Trustee or creditors of the estate were unable to ascertain the Debtor's financial condition from her existing financial records. *See Lansdowne v. Cox (In re Cox)*, 41 F.3d 1294, 1296 (9th Cir.1994) (stating that " '[i]n order to state a prima facie case under section 727(a)(3), a creditor objecting to discharge must show (1) that the debtor failed to maintain and preserve adequate records, and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transac-

tions'") (quoting *Meridian Bank v. Alten,* 958 F.2d 1226, 1232 (3rd Cir.1992)).

### Cause of Action Under § 727(a)(4)

■ Wynn has failed to convince the Court that the Debtor "knowingly and fraudulently" made a false oath or account under § 727(a)(4)(A).

First, assuming arguendo that the Debtor misstated the values of certain reptiles on her bankruptcy schedules, the Court cannot conclude that such misstatements were knowing or fraudulent. *See In re Parsell,* 172 B.R. 226, 230–32 (Bankr.N.D.Ohio 1994), and cases cited therein; *Patton v. Hooper (In re Hooper),* 39 B.R. 324, 330 (Bankr. N.D.Ohio 1984) (held that error in valuing gold ring did not warrant denial of discharge). Even if the Court accepts Wynn's argument that the state court's determination as to the value of the reptiles is entitled to collateral estoppel effect, the Court cannot conclude that the Debtor's departure in her bankruptcy schedules from the value of the reptiles established by the state court was knowing and fraudulent. Rather, here, as in *Wines v. Wines (In re Wines),* where the court found that a debtor's undervaluation of an asset on his bankruptcy schedules by $20,000.00 did not warrant denial of discharge, the Debtor's testimony indicated that she made a "bona fide effort" to value the reptiles based on the information which was available to her. *Wines v. Wines (In re Wines),* 997 F.2d 852, 856–57 (11th Cir.1993).

■ Second, while the Court agrees with Wynn that a debtor's fraudulent nondisclosure of a material business interest represents cause for denying a discharge, *Beaubouef v. Beaubouef (In re Beaubouef),* 966 F.2d 174 (5th Cir.1992), *Palatine Nat'l Bank v. Olson (In re Olson),* 916 F.2d 481 (8th Cir.1990), *Job v. Calder (In re Calder),* 907 F.2d 953 (10th Cir.1990), the Court rejects Wynn's contention that the Debtor has been engaged in the reptile breeding business.

Finally, Wynn has argued that the Debtor made misrepresentations on her schedules and Statement of Affairs with respect to her employment status, her receipt of child support, the value of her dog, her interest in the motorcycle, her alleged interest in a ring,

and her monthly expenses. The Court cannot concur.

### Cause of Action Under § 727(a)(5)

■ The Court similarly rejects Wynn's argument that the Debtor has failed to satisfactorily explain a loss of assets or a deficiency of assets to meet her liabilities. *Cf. Hawley v. Cement Indus., Inc. (In re Hawley),* 51 F.3d 246, 249 (11th Cir.1995) (" 'To be satisfactory, an explanation must convince the judge.' ") (quoting *Chalik v. Moorefield (In re Chalik),* 748 F.2d 616, 619 (11th Cir.1984) (citations and internal quotation marks omitted)). True, the Debtor's scheduled values for the reptiles differed from the value assigned to the reptiles by the state court. Nevertheless, the Debtor provided the Court with a good faith explanation for the differences between her scheduled values for the reptiles, derived from price lists, and the values arrived at by the state court. *Energy Marketing Corp. v. Sutton (In re Sutton),* 39 B.R. 390, 397 (Bankr.M.D.Tenn.1984); *see also In re Parsell,* 172 B.R. at 232.

The Court credits the Debtor's testimony that certain of the reptiles died. Moreover, the Court credits the Debtor's testimony that her Albino Burmese Python, which the state court valued at $2,500.00, had a value of $375.00 on the petition date.

### WYNN'S COMPLAINT TO EXCEPT DIVORCE JUDGMENT DEBT FROM DISCHARGE

### Cause of Action Under § 523(a)(2)(A)

Neither the decree nor the testimony presented at trial support Wynn's argument that the Debtor's $4,161.50 judgment debt to Wynn arose from fraud. The Court found Wynn's allegations of fraud to be frivolous.

### Cause of Action Under § 523(a)(4)

Among other deficiencies in the proof on Wynn's allegations of fiduciary fraud, Wynn has not established that the Debtor had a fiduciary relationship to Wynn. *Wright v. Wright (In re Wright),* 184 B.R. 318, 322–23 (N.D.Ill.1995); *Beauchaine v. Beauchaine (In re Beauchaine),* 113 B.R. 116, 117–18 (Bankr.D.R.I.1990); *Pattie v. Pattie (In re Pattie),* 108 B.R. 791, 796 (Bankr.M.D.Fla. 1989); *Lanker v. Wheeler (In re Wheeler),* 101 B.R. 39, 45–47 (Bankr.N.D.Ind.1989); *cf.*

*Teichman v. Teichman (In re Teichman),* 774 F.2d 1395, 1398–1400 (9th Cir.1985) (held that husband did not have fiduciary duty to wife in connection with property settlement agreement).

### Cause of Action Under § 523(a)(5)

■ The Court rejects Wynn's argument that the state court intended to impose a support obligation on the Debtor when it granted Wynn a $4,161.50 judgment against the Debtor. First, the language of the decree does not indicate that the state court intended to impose a support obligation. *Nofziger v. Zuccarell (In re Zuccarell),* 181 B.R. 42, 45 (Bankr.N.D.Ohio 1995); see *McCafferty v. McCafferty (In re McCafferty),* 96 F.3d 192, 195 (6th Cir.1996) ("Where the state court or the parties to the divorce did not intend to create an obligation in the nature of support, that obligation cannot qualify for a section 523(a)(5) exemption.") (citing *Long v. Calhoun (In re Calhoun),* 715 F.2d 1103, 1109 (6th Cir.1983)). Second, the relative financial circumstances of the parties at the time of the divorce belie Wynn's assertion that the judgment represents a support obligation. *Semler v. Semler (In re Semler),* 147 B.R. 137, 139–40 (Bankr.N.D.Ohio 1992); *cf. Singer v. Singer (In re Singer),* 787 F.2d 1033, 1034–35 (6th Cir.1986) (stating that court should consider relative financial positions of parties at time of divorce in determining whether obligation was in the nature of support) (citation omitted). The Debtor had no income and the duty to support two minor children. Third, the judgment debt was not designed to furnish Wynn with the necessities of life. Fourth, the lump sum character of the debt does not support Wynn's argument that the debt represents a support obligation.

### Cause of Action Under § 523(a)(15)

■ After examining the Debtor's assets and her present and prospective earning ability, *Henderson v. Henderson (In re Henderson),* 200 B.R. 322, 326 (Bankr. N.D.Ohio 1996) (citations omitted), the Court concludes that the Debtor does not have the ability to pay the judgment in favor of Wynn from income or property not reasonably necessary for her support. 11 U.S.C. § 523(a)(15)(A); *Hill v. Hill (In re Hill),* 184 B.R. 750, 754–55 (Bankr.N.D.Ill.1995).

Notwithstanding Wynn's argument that the Debtor is capable of working, the Debtor's present earning capacity is minimal. The sporadic support payments which the Debtor receives from her first husband do not measurably improve her future financial outlook.

Wynn argues that Wolfe's income and assets should be examined by the Court in determining the dischargeability of the judgment debt. The courts have split on this issue. *Compare Cleveland v. Cleveland (In re Cleveland),* 198 B.R. 394, 398–99 (Bankr. N.D.Ga.1996) (holding that court could consider income of debtor's live-in companion) (citations and footnotes omitted); *with Willey v. Willey (In re Willey),* 198 B.R. 1007, 1014–15 (Bankr.S.D.Fla.1996) (refusing to consider income of debtor's girlfriend in determining debtor's disposable income under § 523(a)(15)). The Court shall accept Wynn's position arguendo. Nevertheless, even considering Wolfe's earnings of $15,-000.00 per year as a part-time bartender, his uncertain earnings from the reptile breeding business, and his ownership of the Home, the Court is not convinced that the Debtor is capable of repaying the judgment debt in the forseeable future.

■ Furthermore, discharging the judgment debt will benefit the Debtor more than it will harm Wynn. *Morris v. Morris (In re Morris),* 197 B.R. 236, 244–45 (Bankr. N.D.W.V.1996); *Hill v. Hill (In re Hill),* 184 B.R. 750, 755–57 (Bankr.N.D.Ill.1995); see also *Woodworth v. Woodworth (In re Woodworth),* 187 B.R. 174, 177–78 (Bankr. N.D.Ohio 1995). The Debtor is unemployed and has two minor children. Wolfe does not have significant income or assets which would aid the Debtor in repayment of the judgment. On the other hand, Wynn, who has no dependents, has a steady income from his employment as a charter captain and from his operation of a produce stand.

In light of the foregoing, it is therefore

ORDERED that Eldon Wynn's complaint be, and it hereby is, denied. It is further,

ORDERED that Eldon Wynn's complaint should be dismissed with prejudice.