In re Dianna L. DEPPE, Debtor.

Mark K. SCHAEFER, Plaintiff,

v.

Dianna L. DEPPE, f/k/a Dianna L. Schaefer, Defendant.

Bankruptcy No. 96–43133.
Adversary No. 97–4041.

United States Bankruptcy Court, D. Minnesota.

Feb. 2, 1998.

Jay A. Benson, Chanhassen, MN, for Plaintiff.

Jane S. Welch, Rider, Bennett, Egan & Arundel, L.L.P., Minneapolis, MN, for Defendant.

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER FOR SUMMARY JUDGMENT

NANCY C. DREHER, Bankruptcy Judge.

The above-entitled adversary proceeding came on for hearing before the undersigned on December 17, 1997, on the motion of the Debtor–Defendant, Dianna L. Deppe ("Dianna"), for summary judgment pursuant to Federal Rule of Bankruptcy Procedure 7056.[1]  Appearances were as noted on the record.  After carefully considering the papers, pleadings and arguments of counsel, the Court has determined that Defendant's motion for summary judgment should be granted.

### FACTS [2]

I.  GENERAL BACKGROUND

Plaintiff, Mark Schaefer ("Mark") and Dianna were married on March 18, 1978.  They have three children: Kathryn born in 1983, Laura born in 1985, and Monica born in 1989.

In July of 1992, Mark and Dianna borrowed $55,000.00 from Mark's parents, Ed-

---

**1.**  On this date, I also heard Plaintiff's motion for summary judgment and a separate discovery motion, both of which I denied.

**2.**  For purposes of this motion, only undisputed relevant facts are recited.

win and Blanche Schaefer ("Schaefers"), to assist them in avoiding the cancellation of a contract for deed on their home located at 3308 West 102nd Street, Bloomington, Minnesota. To memorialize this transaction, Mark drafted a promissory note in which Mark and Dianna promised to pay Mark's parents $55,000.00 plus interest at an annual rate of 9% until the debt was repaid. The promissory note made no reference to, and did not purport to effect, a grant to the Schaefers of a mortgage on the homestead. Ultimately, Mark and Dianna made only one payment under the promissory note in the amount of $1,518.90. In connection with trying to protect the home from foreclosure, Mark and Dianna incurred legal fees to the law firm of O'Neill, Burke, O'Neill, Leonard and O'Brien ("the law firm") in the sum of $9,070.00.

. On February 14, 1995, the marriage between Dianna and Mark was dissolved in Minnesota state court. Pursuant to the divorce decree, Dianna was granted "all right, title, and interest, free and clear of any interest by [Mark], in and to the homestead property located at 3308 West 102nd Street, Bloomington, Minnesota." The divorce decree further provided that Dianna would "be responsible for all debt [in] relation to the homestead...." The debts specifically enumerated were the debt to Mark's parents, legal fees still owing to the law firm, a debt in the sum of approximately $11,000 owed to Dianna's relations, and past due real estate taxes. Subsequently the decree was amended to make Dianna responsible for only $58,013.00 of the amount owed to Mark's parents, with Mark responsible for $6,687.00. Both the divorce decree and the amendment further provided that "Should Respondent [Mark] pay any of these debts, Petitioner [Dianna] shall indemnify and hold him harmless therefore." Neither the original divorce decree nor any one of the amended decrees [3] imposed a lien against the homestead to secure Dianna's payment of the promissory note.

The decree awarded physical custody of the three children to Dianna. Mark was ordered to pay child support including $546.00 per month in child support, 50% of the children's day care expenses, and a percentage of the medical insurance costs for the children. Mark has made virtually none of these payments.[4] As of January 31, 1997, Mark had failed to pay $13,895.90 in child support, $3,227.92 in day care reimbursement, and $3,394.50 in health care and dental reimbursements. By the time of trial in this case, the arrearages approached $30,000. This has caused Dianna severe financial difficulties and, according to Dianna, made payment on the debt to Mark's parents impossible. She did offer to pay the debt over time if Mark paid child support arrearages. This offer was declined.

In the Spring of 1996, the Schaefers commenced an action in state court to collect the debt from Dianna alone. The Schaefers did not name Mark as a defendant. At about the same time, another creditor served Dianna with a wage garnishment. On May 16, 1996, Dianna filed a petition for relief under Chapter 13 of the United States Bankruptcy Code. On Schedule C of her bankruptcy petition, she listed the full value of the homestead property as exempt under Minn.Stat. § 510.01. On Schedule F, she listed the Schaefers' claim as an unsecured nonpriority debt. On June 6, 1996, the Schaefers filed a proof of unsecured claim in the amount of $76,915.90. On November 8, 1996, after the Schaefers filed an objection to the confirmation of Dianna's proposed Chapter 13 plan, Dianna voluntarily converted her Chapter 13 case to Chapter 7. On February 11, 1997, Dianna was granted a discharge pursuant to 11 U.S.C. § 727.

· On February 18, 1997, the Schaefers commenced an adversary proceeding against Dianna seeking the imposition of an equitable mortgage on the homestead to secure payment of their claim. I resolved that adversary proceeding in Dianna's favor on summary judgment and the decision has not been

---

**3.** The February 14, 1995 divorce decree was subsequently amended on March 13, 1995, May 31, 1995, and March 21, 1996.

**4.** He apparently began to pay some child support during the time he was attempting to get his child support obligations reduced on the grounds of changed circumstances.

appealed. Mark had previously unsuccessfully sought to have the state court amend the divorce decree to impose such a lien on the property. He had also unsuccessfully sought to have the state court reduce his child support payments, based on his claims that he could not pay them in light of his realistic earnings and earning power. While ruling on that motion, the state court made findings that Mark should have been able to earn adequate income to pay the support payments. It further held that it would be unfair to require Dianna to pay the debt on the home while Mark .failed to pay child support.

On March 31, 1997, Mark also commenced this adversary proceeding seeking to have Dianna's debt to him excepted from discharge under 11 U.S.C. § 523(a)(15).[5] Dianna answered and counterclaimed, seeking to have the court determine the note usurious and unenforceable or the debt to Mark, if any, excused to the extent Mark is in arrears in child support payments. She also sought attorneys' fees and expenses. The case has had a somewhat difficult history because Mark's first two attorneys in the case withdrew and his current attorney once withdrew, only to reappear again. In October 1997, I granted Mark's motion to amend the complaint to allow him to add a claim that Dianna's debt to the law firm should also be declared nondischargeable in the bankruptcy case under § 523(a)(15). There have been some discovery disputes, of which the principal one revolved around Dianna's inability to produce her bank records. I resolved the discovery dispute in Dianna's favor essentially holding that she had complied with Mark's request for records and that she was under no obligation to produce bank records which were not in her possession, custody or control. Both parties sought summary judgment. As previously indicated, I denied Mark's motion for summary judgment and took Dianna's motion under advisement. Dianna also sought to have the court rule that this action is frivolous and brought for an improper purpose and that attorneys' fees and expenses should be awarded to her. I reserved ruling on that request, as well.

## II. DIANNA'S FINANCIAL SITUATION

Dianna has filed an extensive set of exhibits and affidavits in connection with her motion for summary judgment. None of this evidence has been rebutted with responsive evidence, as opposed to argument, by Mark.

### A. Income and Expenses

Dianna is forty-one years old. She is a certified public accountant employed with a private CPA office. At the time of the dissolution she was self-employed as a CPA making a gross income of approximately $25,000 per year. Her current gross income is approximately $43,000 per year; her gross monthly pay is $3,261.86; and her monthly take home pay per two-week pay period is $1,136.22. The divorce decree awarded her $560.00 per month in child support, one-half of her child care expenses, and certain medical and dental insurance premiums for the children. Since Mark has not paid these obligations, which as of this date are close to $30,000 in arrears, and claims that he is not now able, nor will he be able in the future, to pay them, these obligations cannot be reasonably included in her income.

At the time of the dissolution, Dianna's expenses for herself and her three children were $2,141 per month, which did not include any mortgage payment. After adjusting for her need to make payments for debts on the home which were assumed during the divorce, the state court found her monthly expenses exceeded $3,000.00 per month. The decree made clear that Dianna was awarded child support from Mark because, without it, she could not meet her expenses and care for the three children.

When she filed her Chapter 13 petition in May of 1996, Dianna listed $2,150.00 in monthly expenses, not including any house payment nor a car payment. These were bare bones expenses for a single mother

---

**5.** As with many of Mark's papers in this case, the complaint is inarticulately framed. It seeks to have the debt to the Schaefers declared nondischargeable under § 523(a)(15). The Schaefers have not commenced a nondischargeability proceeding, however, and Dianna's debt to them has been discharged. It is agreed that the true nature of the relief sought relates to Dianna's debt to Mark arising out of the dissolution proceedings.

supporting three children. She included $345.00 in day care and school expenses and lunches for the children. She reflected $375.00 in disposable income, without a car or home payment expenses, which she proposed to pay to creditors.

By October 1996, when she filed her Chapter 7 Schedules, Dianna listed the following monthly expenses which, except for the additional car payment, were essentially the same as those she had shown all along:

| | |
|---|---:|
| real estate taxes | $ 175 |
| property insurance | 30 |
| utilities | 290 |
| food | 500 |
| clothing | 100 |
| transportation (not including car payment) | 325 |
| recreation | 40 |
| life insurance | 130 |
| auto insurance | 135 |
| auto payment | 375 [6] |
| business expenses | 40 |
| day care, school expenses & lunches | 212 |
| | $2,352 |

In June of 1997, after this adversary proceeding was commenced and she had received her discharge, Dianna borrowed $50,000 against her homestead. She used the proceeds to replace her 10–year–old Camry with a 1997 Corolla (approximately $18,000), pay an attorneys' fee retainer (slightly more than $10,000), pay a modest debt to Sears (approximately $1,200), pay real estate taxes and a few miscellaneous other bills, and to make home improvements (a new furnace, deck, and a roof, all of which were maintenance and repair items needed to keep up the home).[7]

In connection with this motion and Mark's cross motion, Dianna has filed affidavits showing that her monthly expenses have increased slightly since October 1996. She no longer has a car payment and she has a $460 payment on the new $50,000 mortgage. After tax benefits derived from deducting interest on the loan for the homestead, the car payment and substituted house payment are essentially a wash. Her affidavit filed in connection with this motion shows $2,663 in monthly expenses as follows:

| | |
|---|---:|
| Mortgage | $ 460 |
| Real Estate Tax | 149 |
| Home Insurance | 35 |
| Electricity | 70 |
| Minnegasco | 95 |
| Water/sewer | 24 |
| Telephone | 55 |
| Garbage | 38 |
| Home Repairs/Maintenance | 25 |
| Groceries | 500 |
| Clothing | 100 |
| Dry cleaning | 20 |
| Medical & dental expenses | 40 |
| Car insurance | 83 |
| Car maintenance | 60 |
| Fuel—car | 110 |

---

6. Apparently this was for a vehicle she had purchased but which was subsequently repossessed.

7. Dianna has filed affidavits establishing that the furnace, deck and roof were all in a dangerous state of disrepair. Mark has not rebutted that evidence.

| | |
|---|---:|
| Charitable contributions | 60 |
| School expenses (field trips, etc.) | 10 |
| School lunches | 90 |
| MHR Tuition | 96 |
| LHS Tuition | 188 [8] |
| Day care | 140 |
| Birthday gifts (daughters attend) | 12 |
| Recreation, entertainment, etc. | 40 |
| Life insurance | 98 |
| Birthday/Christmas gifts-girls | 65 |
| | $2,663 |

Dianna has checking accounts, but she rarely uses them, preferring instead to pay cash. To protect sums against creditor claims, she has put some money in the accounts of a male friend.[9]

### B. Assets

The dissolution decree awarded Dianna her homestead valued at $110,000 which was not then (but is now) subject to any encumbrances of record. Other than the home, and minor personal property, the divorce decree granted her a 1986 Camry, insurance policies of minimal value, and an IRA of minimal value (although an amount roughly equal to Mark's IRA). Since the divorce, Dianna has not accumulated additional assets, except for the new Toyota.

### III. MARK'S FINANCIAL SITUATION

Mark's financial situation is derived almost exclusively from the voluminous pleadings which were generated during the dissolution proceedings and subsequent post-decree activities.

### A. Income and Expenses

Mark is forty-one or forty-two years old. He is a self employed certified public accountant with a Master's Degree in Business Taxation. Mark and Dianna owned their own CPA business before their split. The state court valued their business at $70,000 in the decree. In 1996 the business grossed at least $78,000, but Mark estimated his net

income from the business to be $6,500. During that year, however, he paid $32,000 to employees including $21,000 to his live-in roommate. He claims that the business made $5,068 in 1993, made $2,207 in 1994, and lost $4,923 in 1995.

He has no personal checking account. But, findings in the state court proceeding show that he pays some personal expenses out of the business revenues. Suffice it to say, it is unclear precisely how much income he has and that some of the difficulty in determining this has to do with the way he treats expenses in the business. Mark does claim to be destitute and unable to make child support payments because he has no money.

Mark has a live-in roommate which allows him to keep expenses down. He claims his monthly living expenses are around $796.00.

### B. Assets

Mark claims to have virtually no assets. In the dissolution proceedings he was awarded the joint CPA business valued at $70,000,[10] a Corvette valued at $6,750, certain life insurance policies valued at about $12,000, his IRA, and certain personal property. He agreed to pay joint debts in the sum of at least $45,000. He has more than $100,000 in unpaid debts at this time. Since the divorce he has quit claimed a car and a boat to his parents in return for which they have forgiven that portion of the homestead debt to them that he was made responsible for in the

---

**8.** At Mark's insistence, the two oldest girls are enrolled in a private Lutheran school.

**9.** This male friend does not live with her and no evidence has been introduced to suggest that his income, expenses, or assets should be imputed to Dianna.

**10.** It is Mark's position that the business suffered badly when Dianna left it in the midst of a busy season, thereby antagonizing clients. According to Mark, he is struggling to rebuild the business.

divorce decree. He has also given his car to his live-in girlfriend and thus owns no vehicle. He has testified that his parents are around seventy-five years of age, with some assets which could pass to him upon their demise, and that he is concerned that, if Dianna does not pay the debt to his parents, it will jeopardize an inheritance he might otherwise receive from them.

## CONCLUSIONS OF LAW

### I. SUMMARY JUDGMENT STANDARDS

■ Summary Judgment is governed by Federal Rule of Civil Procedure 56, which is made applicable to this adversary proceeding by Bankruptcy Rule 7056. Federal Rule 56 provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

FED.R.CIV.P. 56(c). The moving party on summary judgment bears the initial burden of showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If the moving party is the plaintiff, it carries the additional burden of presenting evidence that establishes all elements of the claim. *Id.* at 325, 106 S.Ct. at 2553–54; *United Mortg. Corp. v. Mathern (In re Mathern)*, 137 B.R. 311, 314 (Bankr.D.Minn.1992), *aff'd*, 141 B.R. 667 (D.Minn.1992). When the moving party has met its burden of production under Rule 56(c), the burden then shifts to the nonmoving party to produce evidence that would support a finding in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). This responsive evidence must be probative, and must "do more than simply show that there is some metaphysical doubt as to the material fact." *Id.* If the nonmoving party fails to come forward with specific facts showing that there is a genuine issue for trial, summary judgment is appropriate. *Id.* at 587, 106

S.Ct. at 1356; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–51, 106 S.Ct. 2505, 2510–12, 91 L.Ed.2d 202 (1986). Finally, it is quite clear that the mere existence of cross-motions for summary judgment in this case does not necessarily establish that there are no genuine issues left for trial. Rather, cross-motions for summary judgment must be considered separately and do not relieve the court of its responsibility to determine the appropriateness of a summary disposition. *Wermager v. Cormorant Township Bd.*, 716 F.2d 1211, 1214 (8th Cir.1983); *United States v. Porter*, 581 F.2d 698, 703 (8th Cir.1978).

### II. DISCHARGEABILITY UNDER 11 U.S.C. § 523(a)(15)

#### A. *The Statute*

The statute, 11 U.S.C. § 523(a)(15), provides, in pertinent part:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
>> (15) not of the kind described in paragraph (5) [a debt to a spouse, former spouse or child of the debtor for alimony, maintenance or support] that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—
>>
>>> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor . . .; or
>>>
>>> (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor. . . .

11 U.S.C. § 523(a)(15) (1994). Section 523(a)(15) was added to the Bankruptcy Code in 1994 to address the inequities resulting from the discharge of marital property set-

tlements, particularly in the case where the marriage was dissolved by stipulation and the nondebtor spouse had agreed to take reduced child support or maintenance in exchange for an increased property settlement. H.R.REP. No. 103–385, at 54 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3363. This amendment makes debts (other than those owing to a spouse, former spouse, or child of the debtor for alimony, support, or maintenance) which were incurred by the debtor in the course of a divorce or dissolution proceeding nondischargeable with two exceptions. Section 523(a)(15)(A) prevents the exception of a debt from discharge in cases where the debtor does not have the ability to pay the debt; alternatively, § 523(a)(15)(B) makes the § 523(a)(15) exception to discharge inapplicable in cases where the equities weigh in favor of the debtor for nonpayment of the debt. *Hill v. Hill (In re Hill)*, 184 B.R. 750, 755–56 (Bankr.N.D.Ill.1995).

For purposes of this motion only, Dianna has conceded that the debt at issue, her agreement to indemnify Mark and hold him harmless should he be required to pay the debts to the Schaefers or to the law firm, falls within § 523(a)(15) as a debt "not of the kind described in [ § 523(a)(5) ] that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record...."[11] This establishes Mark's prima facie case, *see. e.g., Jodoin v. Samayoa (In re Jodoin)*, 209 B.R. 132, 139–40 (9th Cir. BAP 1997), and leaves for resolution only the question of whether there is an absence of a material issue of fact on either her ability to pay or the balance of the equities.

### B. *Burden of Proof*

The majority of courts have held that, once such a prima facie case under § 523(a)(15) has been established, the debtor has the burden of proof as to both the debtor's ability to pay and the balance of equities. *Jodoin,* 209 B.R. at 139 (citing *Wynn v. Wynn (In re Wynn)*, 205 B.R. 97, 101 (Bankr.N.D.Ohio 1997); *Bodily v. Morris (In re Morris)*, 193 B.R. 949, 952 (Bankr.S.D.Cal.1996); *Collins v. Florez (In re Florez)*, 191 B.R. 112, 115 (Bankr.N.D.Ill.1995)). There is also a minority view which places the burden of proof on both prongs of § 523(a)(15) on the nondebtor, and even a following for the argument that the debtor has the burden of proof on the ability to pay prong and the creditor has the burden of proof on the equities prong. *Id.* at 139–40. Wherever placed, it is generally accepted that the proof must be by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991).

Again, for purposes of narrowing the issues to be decided, Dianna has conceded that she has the burden of proof by a preponderance of the evidence and that to prevail at trial she would need to establish either that: (1) she cannot pay, within the meaning of Subdivision A; or (2) if she can, the benefits to her of discharging the debt outweigh the burdens on Mark from doing so. Because this is a motion for summary judgment, moreover, she bears the heavy burden of proving that there is no genuine issue of material fact on one such element or the other.[12]

---

**11.** Because of this admission, I need not resolve the conflicting case law as to whether debts owed to third parties are included within § 523(a)(15)'s exception to discharge. *Compare Brian M. Urban Co., L.P.A. v. Wenneman (In re Wenneman)*, 210 B.R. 115, 119 (Bankr.N.D.Ohio 1997), and *Barstow v. Finaly (In re Finaly)*, 190 B.R. 312, 315–16 (Bankr.S.D.Ohio 1995) (holding that debts owed to third parties are not included within § 523(a)(15)'s exception to discharge), *with Zimmerman v. Soderlund (In re Soderlund)*, 197 B.R. 742, 747–48 (Bankr. D.Mass.1996) (holding that § 523(a)(15)'s exception to discharge not limited to debts owed to parties to divorce). *See also Holliday v. Kline (In re Kline)*, 65 F.3d 749, 751 (8th Cir.1995) (hold-

ing that debts owed to third parties can be nondischargeable under § 523(a)(5) where debts are in the nature of alimony, maintenance, or support). Dianna concedes that the debt is one to Mark engendered by the hold harmless provisions of the divorce decree.

**12.** Because Congress used the conjunction "or" in the language of § 523(a)(15), the courts are in agreement that a debt will be nondischargeable if either of § 523(a)(15)'s two subprovisions are met. *See, e.g., Jodoin,* 209 B.R. at 141 n. 24; *Anthony v. Anthony (In re Anthony)*, 190 B.R. 433, 438 (Bankr.N.D.Ala.1995); *Becker v. Becker (In re Becker)*, 185 B.R. 567, 570 (Bankr.W.D.Mo. 1995); *Kessler v. Butler (In re Butler)*, 186 B.R.

## C. *Time at Which the Test is Applied*

As *Jodoin* points out, the courts have reached different conclusions on the question of when the "snapshot" required to resolve the exceptions in (A) or (B) is taken. Is it at the time the decree of dissolution was entered, at the time the bankruptcy case is filed, at the time of trial in the adversary proceeding, or at any other time between the divorce and the trial? Recently, in *Jodoin,* the BAP affirmed a bankruptcy court decision holding that the "snapshot" is taken at the date of trial, pointing out that the focus on current circumstances is arguably more consistent with congressional intent, a more informed analysis, and one which is not likely to lead to absurd and unjust results. *Id.* at 142.

I concur that the "snapshot" should be taken at a time later than the date of the decree of dissolution. In this case, if we looked solely to the financial situation of the parties at the time of the divorce, we would have to ignore the fact that Dianna has new debt on the homestead and, most importantly, we would need to assume that Mark would do what the state court ordered him to do, i.e., pay his child support. That does not seem to make a lot of sense. Accordingly, for purposes of deciding this motion, I will take the "snapshot" of the respective financial conditions and the concomitant equities either at the date of filing or at the date of trial, they being essentially the same.

## D. *The Test For Measuring Ability to Pay*

Section § 523(a)(15)(A) excludes from nondischargeability those debts that the debtor does not have the ability to pay from income or property of the debtor "not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor. . . ." To determine whether the Debtor has the ability to pay a debt for purposes of § 523(a)(15)(A), most courts have applied the "disposable income" test.

371, 371 (Bankr.D.Vt.1995). *See also* 11 U.S.C. § 102(5) (1994) (stating that the term "or" in the Bankruptcy Code is not exclusive).

**13.** 11 U.S.C. § 1325(b)(2) provides in pertinent part:

*Jodoin,* at 142; *Armstrong,* 205 B.R. at 392; *Hill,* 184 B.R. at 755. Such courts have reasoned that "disposable income" is the appropriate standard because language found in § 523(a)(15)(A) is almost identical to the language of § 1325(b)(2). *See Armstrong,* 205 B.R. at 392.[13]

Several recent decisions have focused on whether the debtor's expenses are "reasonably necessary" for support without regard to income. *Fitzsimonds v. Haines (In re Haines),* 210 B.R. 586, 591–92 (Bankr. S.D.Cal.1997); *Morris,* 193 B.R. at 953. This standard is similar to the standard courts use to determine the extent to which property may be claimed as exempt under 11 U.S.C. § 522(d)(10)(E) and Minn.Stat. § 550.37, subd. 24. In those cases, the courts have scrutinized the debtors' expenditures for luxuries, excess, and discretionary items. *See, e.g., In re Schlee,* 60 B.R. 524 (Bankr.D.Minn. 1986); *In re Bari,* 43 B.R. 253 (Bankr. D.Minn.1984). A proper application of this test takes into account the prospective income that the debtor should earn and the debtor's reasonable expenses. *Id.*

## E. *Balancing the Benefit and Detriment*

Even if the debtor is found to have the ability to pay under 11 U.S.C. § 523(a)(15)(A), a debt may still be discharged under 11 U.S.C. § 523(a)(15)(B) where the benefit to the debtor of the discharge outweighs the burden the discharge will impose on the plaintiff. In balancing the equities, the courts have considered such factors as: the income and expenses of both parties; whether the nondebtor spouse is jointly liable on the debt; the number of dependents; the nature of the debts; any reaffirmation of debts; and the nondebtor spouse's ability to pay. *See Haines,* 210 B.R. at 594; *Armstrong,* 205 B.R. at 393; *In re Smither,* 194 B.R. 102, 111 (Bankr.W.D.Ky. 1996); *Hill,* 184 B.R. at 756.

"disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended ... for the maintenance or support of the debtor or a dependent of the debtor. . . .

### III. APPLICATION TO THE FACTS OF THIS CASE

■ This is the quintessential case of a "deadbeat dad" with an ax to grind. I use the term "deadbeat" not in its pejorative sense (i .e., the refusal to pay a debt one can afford to pay—although some might conclude from the evidence that Mark can, but won't, pay). Rather, he's a deadbeat simply because he hasn't paid. He wants to hold his wife to the obligation to his parents to avoid paying it himself in order to prevent their possible disinheritance of him in their estate. I truly doubt Congress intended·to allow a statute designed to protect spouses from rough treatment in bankruptcy to use § 523(a)(15) in this manner.

Those feelings aside, however, the issue on summary judgment can be resolved rather easily. After conceding all other elements of the exception to discharge, Dianna fought this battle on two grounds: (1) her inability to pay the debt to Mark's parents; and (2) her argument that the burden of forcing her to pay would outweigh any detriment to him of discharging the debt. She only needed to succeed on one, not both prongs, and she has succeeded without question on the first.

Dianna has demonstrated, through detailed and carefully prepared, sworn affidavits and verified pleadings that she cannot pay this debt and still maintain a life for her and the three children she cares for on any sort of a reasonable basis. Her income is healthy, but not huge. Her expenses are all quite modest. Her expenses match or exceed her income. It was not extravagant for her to take on mortgage debt for repairs that were necessary to the house that provides the roof over her head and that of the children and to replace a ten-year-old Camry.[14] Her expenses, on all occasions presented, are quite modest, demonstrating that she is leading a relatively frugal life. She and the children obviously need reliable transportation, a roof over their heads, a furnace that works, utilities, food, clothing and a few pennies for entertainment.

■ Mark argues that Dianna's evidence is not to be believed because she doesn't have all her check records and her recordkeeping appears to be poor. He asserts that Dianna could have gotten her check records from her bank and didn't, so how can I believe her?[15] This response constitutes argument, however, not evidence. It is elementary law that once the moving party on a motion for summary judgment has met its burden of production under Rule 56(c), the nonmoving party may not simply rely on the mere denials or allegations contained in its pleadings, but rather must designate specific facts showing that there is a genuine issue for trial. *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511 ("Rule 56(e) provides that, when a properly supported summary judgment motion is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.' "); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553 ("Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves. . . ."); *Barge v. Anheuser–Busch, Inc.,* 87 F.3d 256, 258 (8th Cir.1996) ("After the nonmoving party has met its burden of production, the nonmoving party may not rely on the mere denials or allegations in its pleadings, but must designate specific facts showing that there is a genuine issue for trial."). After reviewing the evidentiary record in this case,[16] it is clear that Mark has simply failed to produce any evidence to rebut Dianna's evidence that she does not have the ability to pay her debt to him from her disposable income.

■ Mark next argues that Dianna clearly has assets which establish her ability to pay

---

**14.** I drive a Camry. They're great cars, but ten years is ten years on even the best vehicle.

**15.** In one of the more bizarre allegations, made quite late in the briefing, Mark asserted that I should deny Dianna her discharge under § 727(a)(3) for her lack of records. This is a frivolous claim, as well as one which was never pleaded in the Complaint.

**16.** In searching for evidence to support the Plaintiff's case, the Court has looked to the evidence presented in support of both the Plaintiff's motion for summary judgment as well as the Defendant's motion for summary judgment.

because she borrowed $50,000 on her home, and put it to the mentioned uses, rather than paying her debt to his parents. If Dianna had purchased a fur coat, a Mercedes, a new home of significantly higher value, jewelry, or even a trip to Paris, this argument might carry some weight. She didn't. She mortgaged her home to avoid making a car payment and also purchased basic and modest necessities for the home and the children. She used some of the money to pay an attorney for the endless legal activities Mark and the Schaefers have engaged in. She made a case that she reasonably needed to use the funds as she did; Mark has not even attempted to prove that she did not. Nothing in § 523(a)(15) would require her to further mortgage her home to pay this debt, thus increasing her debt burden and setting up a situation where the home of Mark's children, and the Schaefers' grandchildren, would be put at risk because it was mortgaged to the hilt.

Deciding the case on this prong, i.e., § 523(a)(15)(A), allows me to ignore the considerable evidence and argument both parties presented on balancing the equities. In what appears to be a mere continuation of nasty and prolonged dissolution proceedings in state courts,[17] Dianna claims Mark is hiding money, cheats on his taxes, and is purposely avoiding his obligations to their children. She further claims that Mark will never be required to pay his parents because they know he cannot pay them; therefore, they will never enforce the note. Mark claims Dianna has received an unfair windfall, a home not burdened with the very debt the family court must have assumed she would pay.

This is the grist of family court, but because the case can be so easily disposed of on the ability to pay test, I chose to limit my decision to that. This leaves Dianna with the home, his parents without a lien, and Mark liable to pay his parents, if he chooses to do so, for whatever reason. So be it. If, as he says, he cannot pay child support, she has established that there is no issue of material fact that she cannot be responsible for and

indemnify him on the loan to his parents. Accordingly, she is entitled to summary judgment in her favor.

## ORDER FOR JUDGMENT

ACCORDINGLY, IT IS HEREBY ORDERED THAT:

1. Defendant's motion for summary judgment in her favor is GRANTED.

2. Plaintiff's action is DISMISSED with prejudice on the merits.

3. This resolution renders Defendant's counterclaim for a declaration of usury MOOT.

4. Defendant shall have 15 days from the date of this order to seek attorneys fees, costs and expenses. If no such request is made, judgment shall be entered in accordance with this order. Should a request be made, the court will defer entry of judgment until it rules on any request for attorneys fees and costs.

---

**17.** A review of the files indicates that the parties have been back to state family court at least five times.